IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL HALL, IDOC # B40832,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   CIVIL NO. 10-944-GPM |
| | ) |
| **SGT. CARTER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Plaintiff Michael Hall, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") who currently is serving a sentence of eighteen years' imprisonment at the Menard Correctional Center ("Menard") for armed home invasion, brings this action pro se pursuant to 42 U.S.C. § 1983 for alleged violations of Hall's constitutional rights by persons acting under color of state law. At this time Hall's complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

Hall's pro se complaint alleges that on June 28, 2010, Hall was strip searched by Defendants Sgt. Carter and C/O Baker, who are prison guards employed at Menard. Hall alleges that during the strip search Beth Morrison, a psychologist at Menard, happened by while Hall was nude and spoke to Hall, in violation of an IDOC regulation generally requiring strip searches to be performed in an area where the search cannot be observed by persons not conducting the search. Hall alleges also that during the strip search he was required by Baker to spread his buttocks so that Baker could see whether Hall had secreted any contraband in his rectum. Hall alleges that the June 28 strip search violated the Fourth Amendment, the Eighth Amendment, and the Fourteenth Amendment, as well as regulations promulgated by the IDOC. Named as Defendants in the case are Carter, Baker, and the IDOC. As damages Hall demands that Carter and Baker each pay him $50,000. After careful review of Hall's complaint, the Court finds that Hall's claims do not survive screening under 28 U.S.C. § 1915A.

As an initial matter, the Court notes that the IDOC is not a proper party to this lawsuit. The Eleventh Amendment generally shields both a state and its agencies from suits by state citizens in federal court, and the IDOC is, of course, a state agency. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Knox v. McGinnis*, 998 F.2d 1405, 1412 (7th Cir. 1993). A state may waive its Eleventh Amendment immunity and Congress may abrogate the immunity. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Meadows v. Indiana*, 854 F.2d 1068, 1069-70 & n.3 (7th Cir. 1988). However, neither is true in this instance, as Illinois has not waived its Eleventh Amendment immunity from suit in federal court and 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *See MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291-92 (7th Cir. 1993); *Kroll v. Board of Trs. of Univ. of Ill.*, 934 F.2d 904, 909 & n.5 (7th Cir. 1991). Also, states and state agencies, as well as state employees sued in their official capacities, are not "persons" subject to suit within the meaning of Section 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999). The Eleventh Amendment does not preclude a suit for prospective relief against a state, its agencies, and state employees sued in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663-64 (1974); *Ameritech Corp. v. McCann*, 297 F.3d 582, 585-86 (7th Cir. 2002). In this case, however, Hall seeks no prospective relief, and Hall's complaint contains no allegations that Hall remains in ongoing danger of violations of his constitutional rights by prison guards at Menard such as might support a grant of prospective relief in this case. *See, e.g., Carr v. Whittenburg*, No. 3:01-cv-625-DGW, 2006 WL 1207286, at *3 (S.D. Ill. Apr. 28, 2006) (a prisoner's complaint stated a claim for injunctive relief where the complaint "suggest[ed] a general policy of promoting retaliation" against prisoners for the exercise of First Amendment rights among Menard officials and

thus "an ongoing threat of harm"). Therefore, the IDOC will be dismissed as a party to this case by reason of Eleventh Amendment immunity.[1]

The Court turns next to Hall's constitutional claims. In general, prisoners enjoy no Fourth Amendment protection from unreasonable searches, including strip searches. As the Supreme Court of the United States has explained, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). Thus, the *Hudson* Court went on to say, "[w]e are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.'" *Id*. at 528 (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). *See also Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995) (citing *Hudson*, 468 U.S. at 526-30) (observing, in the context of a case complaining of strip searches of pretrial detainees, that "privacy is the thing most surely extinguished by a judgment committing someone to prison. Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life."). However, in limited circumstances, a strip search of a prisoner may rise to the level of an Eighth Amendment violation. As the *Hudson* Court noted, its holding did not foreclose all remedies for "calculated harassment unrelated to prison needs . . . . The Eighth Amendment always stands as a protection against 'cruel and unusual punishments.'" 468

---

1. The Court assumes that Hall's claims for damages against Carter and Baker are brought against those IDOC employees in their individual capacities. *See Papasan v. Allain*, 478 U.S. 265, 278 n.11 (1986); *Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

U.S. at 530. *See also Peckham v. Wisconsin Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998) (holding that "it is the Eighth Amendment that is more properly posed" than the Fourth Amendment "to protect inmates from unconstitutional strip searches"). The standard enunciated in *Hudson*, calculated harassment unrelated to prison needs, is demanding. Only strip searches that are "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification'" rise to the level of an Eighth Amendment violation. *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Thus, a prisoner must "show that the strip search was 'conducted in a harassing manner intended to humiliate and inflict psychological pain.'" *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004) (quoting *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003)).

In this instance Hall does not allege that the strip search on June 28, 2010, was performed in a harassing manner designed to cause psychological pain, although Hall does suggest that the fact that he was ordered to spread his buttocks during the search shows somehow that Carter and Baker are homosexuals, a patently ridiculous allegation. Hall seems to allege some inconvenience to himself as a result of the search but "temporary inconveniences and discomforts" do not rise to the level of Eighth Amendment violations. *Adams v. Pate*, 445 F.2d 105, 108 (7th Cir. 1971). Although Hall claims that the search failed to turn up any contraband, assuming that this is true, it does not show that the purpose of the search was harassment. The Court is aware from the many lawsuits Hall has filed in this tribunal that Hall is not a model prisoner and in fact was in disciplinary segregation at the time this case was filed for gross infractions of prison rules. *See Hall v. Reynolds*, Civil No. 10-491-GPM (S.D. Ill. July 13, 2010), Doc. 5-1 at 1 (adjustment committee final report, approved by the warden at Menard on July 5, 2010, sentencing Hall to six months' disciplinary

segregation after Hall pleaded guilty to charges of threatening prison guards with the words "You mother fuckers are going to get thrown on," throwing an unknown liquid out of his cell, and responding to an order to submit to handcuffing by saying, "Fuck you mother fucker, I aint [sic] cuffing up."). The Court also is aware that on at least one prior occasion in the recent past a search of Hall's cell at Menard yielded dangerous contraband of the kind that a prisoner could hide in a body cavity. *See Hall v. Taylor*, Civil No. 11-21-GPM (S.D. Ill. Jan. 10, 2011), Doc. 1 at 8 (adjustment committee final report, approved by the warden at Menard on July 12, 2010, sentencing Hall to six months' disciplinary segregation after Hall pleaded guilty to a charge of possessing a pair of broken eyeglasses with altered arm-pieces that could be filed down to a point for use as homemade prison knives or "shanks"). In light of Hall's poor disciplinary history, it was appropriate for Carter and Baker, in searching for contraband, to strip search Hall. *See Johnson*, 69 F.3d at 146 (prison officials "are entitled to take precautions against drugs and weapons . . . which can be . . . hidden in the rectal cavity"); *Hollgarth v. Dawson*, No. 05-2125, 2007 WL 2812151, at **14-15 (C.D. Ill. Sept. 19, 2007) (finding constitutional strip searches of a prisoner with a history of escape attempts whom prison officials reasonably believed was plotting a new escape attempt and making weapons); *Bono v. Saxbe*, 527 F. Supp. 1182, 1185 (S.D. Ill. 1980) (a prisoner's security level and history of possessing contraband and escape attempts are relevant to the constitutional propriety of a strip search).[2]

---

2. In fact, it seems likely that Hall was strip searched on June 28, 2010, incident to being placed in segregation for the disciplinary charges of intimidation or threats, insolence, and disobeying a direct order that resulted in the segregation sentence approved by the warden at Menard on July 5, 2010. If so, the Eighth Amendment constitutionality of the strip search is clear. *See Peckham*, 141 F.3d at 695 (upholding the constitutionality of certain routine strip searches of prisoners, such as those that occur "whenever a prisoner moves into segregation").

With respect to the fact that during a portion of the strip search Hall was observed nude by a female IDOC employee, it is the case, as Hall points out, that under IDOC regulations "[s]trip searches and visual searches of anal or vaginal body cavities of committed persons shall be conducted by persons of the same sex as the committed person and in an area where the search cannot be observed by persons not conducting the search, except in cases of an emergency." Ill. Admin. Code tit. 20, § 501.220(b)(2). However, the United States Court of Appeals for the Seventh Circuit specifically has held that, in an era in which increasing numbers of women are employed by prisons in jobs requiring direct contact with prisoners, random observation of nude male prisoners by female prison personnel is inevitable and is not actionable as an Eighth Amendment violation. *See Johnson*, 69 F.3d at 146 (observing that "[u]nless female guards are shuffled off to back office jobs . . . , they are bound to see the male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs," and going on to hold that monitoring of a male pretrial detainee by female guards while he was naked was not cruel and unusual punishment, where there was no claim that the monitoring policy was adopted to embarrass or humiliate the detainee and the cross-sex monitoring allowed efficient use of jail staff and supported the entitlement of female guards to equal treatment in the workplace). Finally, as Hall points out also, IDOC regulations permit only medical personnel to conduct what the regulations term "[i]ntrusive searches of anal or vaginal body cavities of committed persons . . . when a reasonable suspicion exists that contraband may be hidden in a body cavity," with "intrusive" being defined to mean "physical entry into a body cavity." Ill. Admin. Code tit. 20, § 501.220(b)(3). However, Hall does not allege that Carter and Baker conducted an intrusive search, only that Baker conducted a visual search of Hall's anus, as IDOC regulations permit Baker to do. *See id*.

§ 501.220(b)(2). Absent any allegation by Hall that Carter and Baker subjected him to an intrusive search, nothing in the allegations of Hall's complaint suggests that Hall was searched in a manner that violated the Eighth Amendment. *See Lee v. Washington*, No. 97 C 4710, 1999 WL 759609, at *5 (N.D. Ill. Aug. 31, 1999) (citing *McKinley v. Trattles*, 732 F.2d 1320, 1325 (7th Cir. 1984)) (a visual cavity search of an IDOC prisoner by prison guards that did not entail an intrusive search was constitutionally permissible).

With respect to Hall's allegations of violation of his Fourteenth Amendment rights, in general the Seventh Circuit Court of Appeals does not recognize substantive due process claims in the context of allegations of an unconstitutional strip search. *See Johnson*, 69 F.3d at 146. Typically, the due process clause of the Fourteenth Amendment is applied only to strip searches of pretrial detainees, while, as discussed, the Eighth Amendment governs challenges to strip searches of convicted prisoners, although the analysis under both the Fourteenth Amendment and the Eighth Amendment is the same. *See Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006); *Hart v. Sheahan*, 396 F.3d 887, 892-93 (7th Cir. 2005). In any event, the constitutionality of strip searches of prisoners for substantive due process purposes is well established. *See Johnson*, 69 F.3d at 146 (citing *Bell v. Wolfish*, *supra*).[3] As to Hall's claim that being strip searched violated his Fourteenth Amendment equal protection rights, Hall has alleged neither that he belongs to a

---

3. Although Hall does not appear to suggest that he should have received a hearing before being strip searched, to the extent Hall may be attempting to assert a Fourteenth Amendment procedural due process claim, strip searches can hardly be said to "impose[ ] atypical and significant hardship on [prisoners] in relation to the ordinary incidents of prison life" so as to give rise to a liberty interest that must be protected by affording prisoners notice and an opportunity to be heard before they can be strip searched. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In fact, all prisoners in IDOC custody are subject to searches, including strip searches, at any time. *See* Ill. Admin. Code tit. 20, § 501.220(b)(1).

protected class against which Menard prison authorities deliberately discriminated nor that other Menard prisoners outside the class were treated more favorably than he was, as Hall must show to establish an equal protection violation.  *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982). At best, Hall has alleged an "isolated event[ ] that adversely affect[ed]" him and that is "not presumed to be a violation of the equal protection clause." *Id*. (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)).  Finally, any violations of state law by Carter and Baker alleged by Hall are not actionable as violations of Hall's constitutional rights.  *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989)); *Archie v. City of Racine*, 847 F.2d 1211, 1216 (7th Cir. 1988); *James v. Illinois Sexually Dangerous Persons Act*, Civil No. 09-40-GPM, 2009 WL 2567910, at *5 (S.D. Ill. Aug. 19, 2009).  Hall has failed to allege any violation of his constitutional rights that is cognizable in a suit brought pursuant to 42 U.S.C. § 1983, and therefore this case will be dismissed.

To conclude, pursuant to 28 U.S.C. § 1915A, the Court finds that Hall's complaint fails to state a claim upon which relief may be granted.  Therefore, this action is **DISMISSED with prejudice**.  Hall's motion for appointment of counsel (Doc. 3) is **DENIED as moot**.  Hall is advised that the dismissal of this case will count as one of his three allotted "strikes" under 28 U.S.C. § 1915(g).  The Clerk of Court will enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED:  February 6, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge